In the Matter of Proving the Alleged Will of JOSHUA RAPPLEE, Deceased.

*Duty of the appellate court to order a jury trial on the reversal of a surrogate's decree — what evidence is insufficient to raise a question of fact — evidence as to mental capacity.*

Section 2588 of the Code of Civil Procedure, which requires the appellate court, on the reversal or modification, upon a question of fact, of a surrogate's decree upon the probate, or revocation of probate, of a will to direct the trial by a jury of a material question of fact arising upon the issues between the parties, does not require the court to order such a trial when the evidence appearing upon the record of the appeal is insufficient to raise a question of fact within the legal meaning of that term.

Hence if, on appeal to the General Term from a decree of a surrogate revoking the probate of a will on the ground of want of testamentary mental capacity in

the testator, it appears that there was no evidence before the surrogate in behalf of the contestant which, standing alone, was sufficient to defeat the probate, the General Term is not required to order a jury trial, but it is its duty to regard such failure of evidence as raising a question of law and, consequently, to reverse the decree revoking the probate and confirm the original decree admitting the will to probate.

An expression of opinion by a witness, on the question of the mental capacity of a testator, that a certain act is irrational and indicates unsoundness of mind, is no evidence of unsoundness of mind, facts must be given from which it may be judicially determined that the unsoundness of mind exists before the legal presumption of sanity and of disposing mind can be overcome.

In the absence of evidence of a want of legal capacity on the part of a testator, at or near the time when a will is made, no case is made out by a contestant of its probate.

APPEAL by George Rapplee, one of the executors of the last will of Joshua Rapplee, deceased, and by Erastus Rapplee and others, infants, and by J. P. Parkhurst, special guardian, from a decree of the surrogate of Yates county, dated and entered February 19, 1892, revoking the probate of the last will and testament of Joshua Rapplee, which had been duly admitted to probate October 1, 1888.

*J. F. Parkhurst* and *William S. Briggs*, for the appellants.

*John Gillette*, for the contestants, respondents.

MACOMBER, J.:

Joshua Rapplee, of the town of Barrington, in the county of Yates, died August 31, 1888, leaving a last will which bears date September 20, 1886. This will was admitted to probate, by the surrogate of Yates county, on the 1st day of October, 1888, as a will of both real and personal property. Within one year after such probate, namely, on the 16th day of September, 1889, two of the children and next of kin and heirs-at-law of the testator, Celestia Wallington and Jane Arwine, filed a petition with the surrogate praying for revocation of the probate of the will upon the ground that the testator was not, at the time of making and subscribing the will, of sound mind and memory, and was incapable of executing the same. Upon the return of citations duly issued to all parties interested in the controversy, much evidence was taken, the result of which was that the surrogate made his decree, which was entered on February 19, 1892, revoking the probate of this will

upon the ground stated in the petition, namely, that the decedent was incapable of making a will at the time of the execution of the paper theretofore admitted to probate. From that decree this appeal is taken by one of the executors named in the will, and by sundry of the next of kin of the deceased.

The appeal is taken both upon the law and the facts. But there is no controversy in respect to the formal execution of the will by the testator, nor of the legality and sufficiency of the provisions therein contained. The only question is, whether the testator was possessed of a disposing mind and memory at the time he executed this will.

Under section 2588 of the Code of Civil Procedure, if we come to a conclusion upon this question of fact, contrary to that of the surrogate, the order following our decision would be for a trial by jury of the material questions of fact arising upon the issues between the parties. But this section of the Code does not require us to order such a trial when the evidence, appearing upon the record of the appeal, is insufficient to raise a question of fact within the legal meaning of that term. This matter has been the subject of former judicial inquiry; and the decision of the Court of Appeals, in the *Matter of the Will of Hunt* (110 N. Y., 278), is authority for holding that this provision of the statutes is not peremptory in case of a reversal of the surrogate upon the question of the testamentary capacity of the testator. The court there say : " The language in this section requires an order for a jury trial only where the reversal is ' founded upon a question of fact,' and the legislature undoubtedly intended that only where such was actually the case, and there was a real conflict of evidence, and the Surrogate's Court and the Supreme Court differed on the case, should the conflict be settled by a jury trial in the mode prescribed; but that a new trial before a jury should be deemed necessary, when there is no conflict in the facts, and the matter is one of the conclusions from the facts, is not a construction reconcilable with reason, and we should refuse our sanction to such a construction." (See, also, the cases cited in that opinion.)

If there was no evidence before the surrogate in behalf of the contestants of the will which, standing alone, was sufficient to defeat the probate of the will, it is our duty, we think, to regard such failure of evidence as raising a question of law, and that, conse-

quently, the decree revoking the probate should be reversed and the original decree admitting the will to probate confirmed. We have looked into the details of the evidence adduced in behalf of the contestants of the will, and have made an abstract of them; but even this abstract would occupy too much space to be set forth at large. Of the sixteen witnesses who were examined in behalf of the contestants, not one of them gave any facts which had a tendency to prove that the testator had not a disposing mind at the time of making the will; though all, or nearly all, of them, after describing the conduct of the testator, at different periods during two or three years preceding his death, testified that such conduct impressed them as being irrational. But an expression of opinion by a witness that a certain act is irrational and indicates unsoundness of mind is no evidence of unsoundness of mind. Facts must be given from which it may be judicially determined that the unsoundness of mind exists, before the legal presumption of sanity and of disposing mind can be overcome. There is, among all these witnesses, a concurrence of statement that the testator was a very vigorous man for his age, and was very active in directions rarely attempted by old men, such as speeding the favorite fast horses which he owned, and in hooking up and driving unbroken colts. He is shown by them to have been at this time a man of strong will, and one who managed his farm unaided, except by hired help. His comprehension of the nature and extent of his property, and his ability to manage it properly is not seriously brought into question. But it was shown that he at times had epileptic fits, and after such a seizure he became, for two or three days, weak in mind as well as in body, so that he failed, at such times, to recognize his son-in-law and others. But when he recovered from such attacks his mind again became clear and strong, and he would resume his usual avocations. The will in question was made by him two weeks after one of these epileptic convulsions, and when no fact or circumstance is shown to exist bringing into doubt his ability to make a will. Without evidence of his want of capacity, at that time, or at a time near it, no case can be said to have been made out by the contestants. It is not disputed but that the testator went voluntarily, and at his own suggestion, to the county seat of

Yates county, there to have prepared and executed his last will, and that he gave particular instructions in regard to the disposition which he desired to be made of his estate. One of the subscribing witnesses, Mr. Bellis, a lawyer, had previously drawn two wills for the testator, and the changes which were made in the subsequent wills were such that would naturally follow the changed condition of his affairs, and were in each instance reasonable, and showed a keen foresight. For instance, in the first will the testator provided for a legacy to his grandson, Byron Walling. But by the second will he revoked this bequest, for the reason, which was assigned by himself, of the " careless and reckless manner of living" of the former object of his bounty. The reasonableness of this change is not even attempted to be disputed in the case before us. The new provision contained in the will probated, and which constitutes the only difference between it and the second will, is the following provision : " In case either of the children of Mary E. Rapplee, Clista and Ann Rapplee, shall die before their father, without leaving any issue them surviving, then, and in that case, I hereby give and bequeath the portion of said child so dying, as aforesaid, to the brothers and sisters of the child so dying as aforesaid, and not to the father, Hiram Rapplee, aud Erastus Rapplee." The origin of these changes was with the decedent himself, and not with the scrivener, and that they were reasonable and just, under all the circumstances, can admit of no doubt, for Hiram Rapplee and Erastus Rapplee were insolvent and owed many debts.

We are of the opinion that the evidence adduced in behalf of the petitioners for the revocation of the letters testamentary was insufficient, standing alone, to overcome the evidence of the subscribing witnesses, and the deductions to be made from the undisputed facts relating to the execution of this will. There is, therefore, no question of fact before us, but it is a case of failure of proof, and thus, under the decision already cited, renders it unnecessary to order a trial by jury.

It follows that the decree appealed from should be reversed.

DWIGHT, P. J., and LEWIS, J., concurred.

Decree of the surrogate of Yates county appealed from reversed, with costs and the probate of the will confirmed.