---

In re BRYANT'S WILL. (No. 6495.)

(Supreme Court, Appellate Division, First Department. December 11, 1914.)

Appeal from Special Term, New York County.

Proceeding to prove the last will and testament of Mary S. M. Bryant, deceased, as a will of real and personal property. From an order and decree (148 N. Y. Supp. 917) denying her petition for the probate of a certain paper writing purporting to be such will and testament, Agnes I. Murray appeals. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

John W. Van Gordon, of New York City (William S. Evans, of New York City, on the brief), for appellant.

James H. Hickey, of New York City, for respondent.

PER CURIAM. Decree affirmed, with costs.

LAUGHLIN, J. (dissenting). The sole ground upon which the probate was denied is that the testimony offered in support of the probate, which was not improbable, was not impeached, and was given by wholly disinterested witnesses, was accepted as true, and was insufficient to show that the testatrix declared the instrument to be her last will and testament within the requirements of section 21, subd. 3,

of the Decedent Estate Law (Consol. Laws, c. 13). The purpose of requiring that declaration to be made is to show that the testator is aware of the fact that he is making a will. Trustees of Auburn Seminary v. Calhoun, 25 N. Y. 422. No particular form of words or act is required, and only a substantial, as distinguished from a literal, compliance with the statute is sufficient. Matter of Application of Beckett, 103 N. Y. 167, 8 N. E. 506; Matter of Hunt, 110 N. Y. 278, 18 N. E. 106; Matter of Hardenburg, infra, and cases cited; Lane v. Lane, 95 N. Y. 494; Thompson v. Seastedt, 6 Thomp. & C. 80, affirmed Same v. Stevens, 62 N. Y. 634.

It is contended on the part of the respondent that less strict compliance with the statute is required in the case of a holographic will; but the statute contains no exception, and the fact that the courts have not scrutinized evidence with respect to the execution of a holographic will with the same rigorousness as in other cases shows, I think, that the real inquiry on this point in each case is whether the evidence satisfactorily shows that the testator in some manner made it known to the witnesses that he understood that the instrument he was executing and which he called them to witness was his will. In determining that question, the evidence being that the testatrix, by dictating the will, knew the testamentary character of the instrument (Gilbert v. Knox, 52 N. Y. 125; Matter of Hardenburg, 85 Hun, 580, 33 N. Y. Supp. 150). In Matter of Application of Beckett, supra, there was no declaration by the testatrix at the time to the effect that the paper was her last will and testament. She had previously expressed to one of the subscribing witnesses an intention to make a will, and asked the witness if she "would be willing to sign a paper for her any time that she would ask it." At the time of the execution of the instrument, some time after, the testatrix said to the witness, "There is the paper I spoke to you about signing." The other witness had been a witness to former wills of the testatrix, and was called in and requested to sign "a paper again," and the testatrix stated that she wanted to make *alterations* on account of the illness of an individual named. The court held that it was not necessary for the testatrix, at the time of executing the instrument, to publish it as her will in such manner that a stranger would understand what the paper was, but that it was sufficient that the witnesses understood from her, by what was said or done at the time, in connection with what had been communicated to them by her previously, that it was her will. In Matter of Hunt, supra, the court states the requirements of the statute as follows:

"We think that it is a sufficient compliance with the statutory requirements if, in some way or mode, the testator indicates that the instrument the witnesses are requested to subscribe as such is intended and understood by him to be his executed will. In probate cases the courts look to the substance of the transaction, and see that there was no opportunity for imposition or fraud. This will must have been presented to the witnesses by the testator for them to sign, and such an act was equivalent to a communication by him that he intended to give effect to the paper as his will. If the paper was signed in the presence of the witnesses, that act was a sufficient compliance with the statute as to acknowledgment of the subscription. If signed before being presented to them, the exhibition of the paper, with his acknowledgment that it

was his last will and testament, was a sufficient acknowledgement of the signature and a publication of the will within the rule laid down by, this court in Matter of Phillips, 98 N. Y. 267."

In Lane v. Lane, supra, the Court of Appeals, reversing a judgment based upon a verdict that the testator published the will as to one witness, but not as to the other, and where the evidence did not show that the testator declared to or in the presence of one of the witnesses that the instrument was his will, said:

"We find no room for doubt or mistake. The testator knew, and the witnesses understood from his acts and conduct, as he intended they should, that the instrument then executed was his will. The statute upon this point exacts nothing more, and it is not denied by the respondent that on every other point there was strict compliance with its terms. We find, then, that the testator subscribed the will in the presence of the witnesses, made known to them its nature, and requested their attestation. On his part nothing more was required, and on their part was attestation of the will at his request. Thus every safeguard prescribed by statute against improvidence and fraud was substantially observed."

The wills in those cases were holographic; but, as already stated, the statutory requirement is the same in all cases, and there is the same authority for applying the doctrine of those cases to the case at bar as there was so to decide there. It is only necessary to observe caution in not opening the door to fraud.

In the case at bar, the testatrix was concededly in the full possession of her faculties; but she realized that death was near, and she was desirous of making her will. On the morning of the day the paper was executed she was in bed, and requested the housemaid to send for five cents' worth of foolscap paper, stating that she wished to make her will, and expressed this request in a manner calculated to caution the maid against forgetting it, and indicating that she desired to make her will without delay. The maid complied with the request, and the paper was purchased and delivered to her, and she gave it to the nurse to deliver to the testatrix. The testatrix informed the nurse that she wished to make her will, and dictated it to the nurse, who wrote it upon the foolscap paper. After it was written, the nurse read it over to the testatrix, who directed that the names of the executors designated by her be stricken out, on the ground that they were nonresidents of the state. She then directed the nurse to call in the housemaid "to witness her signature." The maid was called in, and found her in the bed, from which only a few hours before she had asked the maid to obtain the paper to enable her to make her will, and thereupon the testatrix signed the paper, and the witnesses signed it in her presence and in the presence of each other. She had spoken of the paper as a will to the nurse; but, according to the testimony of both witnesses, when the housemaid was called in, the testatrix merely asked her to witness the paper, or to witness her signature on the paper, which she had in front of her, and to sign her name as a witness, which she did. The paper was signed early in the afternoon. The maid observed, at the time, that the paper appeared to be some of that for which she had sent for the use of the testatrix in making her will, and it was. There is no evidence of the

execution of any other paper by the testatrix, or that she had any intention of executing any other paper. The will was on a single sheet of paper, and was all in sight of the witnesses as they sat down to subscribe it. It recites that the testatrix published and declared it to be her last will and testament; but there was no attestation clause.

The reasonable inference, under the circumstances, was that the instrument which the maid was called in to witness was the last will and testament, which the testatrix had, only a few hours before, declared her intention of executing on this paper, which she sent for, for that purpose, at her request. I am of the opinion that it was as clearly conveyed to the housemaid by the testatrix that the paper she was called upon to witness was the last will of the testatrix as if the testatrix had so declared at that time; and, according to the decisions cited, that was sufficient.

I am of opinion, therefore, that the order and decree should be reversed, and a decree entered admitting the will to probate.