Matter of the Estate of JOSE ANTONIO PAEZ, Deceased.

(Surrogate's Court, New York County, June, 1919.)

Wills — holographic — when probate denied — evidence — witness.

> Before even a holographic will can be admitted to probate there must be established a substantial compliance with the statutory requirements in regard to execution.
> Where upon the contested probate of a holographic paper purporting to be a will one of the subscribing witnesses testifies

that testator merely asked her to be a witness to his will but that she did not see his signature or hear him acknowledge the same, and the other subscribing witness identifies his own signature but can recall practically nothing in connection with the execution of the paper, and there is no further evidence other than proof that the paper and signature at the end are in the handwriting of the deceased, the alleged will must be denied probate.

This is so although the first subscribing witness had been employed in a law office at one time and was familiar with the requisites of proper execution, and admits she did not say anything at the time to the deceased in regard to the improper execution of the will.

PROCEEDING upon the probate of a will.

Hunt, Hill & Betts, for proponent.

Sackett, Chapman & Stevens (Edward L. Stevens, of counsel), for contestant.

Andrew S. Hamersley, special guardian.

FOWLER, S.    This is a contested probate proceeding. The instrument offered for probate is holographic. The contestant is a sister of testator, who is his only next of kin and the sole executrix named in the paper propounded.

The only question before the surrogate concerns the regularity of the execution of the alleged last will and testament. There is no issue raised of undue influence, or of fraud or of lack of testamentary capacity. The matter came on for hearing on the Contested Probate Calendar in the regular way, when it was submitted, after argument, on the minutes taken previously in the examination of the subscribing witnesses under section 2611 of the Code of Civil Procedure.

Miss Nathan, one of the subscribing witnesses, is a

Surrogate's Court, New York County, June, 1919. [Vol. 107.

cousin of the contestant and of Mr. Paez, and lived in the same house with them. She identified the handwriting and the signature of the testator upon the examination. She also testified that she had been a witness to wills previously, and that she was formerly employed in a law office. She further testified that the testator asked her to be a witness to " my will," and that the testator, after receiving an affirmative answer, placed the paper against the wall in a hall of the house and she signed the same. She did not say anything to Mr. Paez at that time as to the proper execution of the will. She remembers, however, that the paper was in the handwriting of the testator, because she recognized part of the writing on the instrument as his own, but that she could not read what it was, as it was upside down and the hall was dimly lighted.

The other witness, Mr. MacManus, who admitted having a very poor memory, identified the words " Witness, Suemas MacManus, December 27, 1917," as being in his handwriting. He can recall practically nothing in connection with the execution of the paper.

Miss Nathan's recollection of what was on the paper when she signed the same is substantially as follows: She claims not to have seen even the signature of the testator, and does not remember now whether the signature of the other witness and the date, December 27, 1917, were on the paper immediately above the signature or not. She did not discuss the manner of executing the instrument with any one until after the death of the testator, and although she admits a familiarity with the requisites of the proper execution of a will, she never expressed any opinion as to whether the paper was properly executed as a will or not, because, as she states, that is a matter for the surrogate to decide.

The will, being wholly holographic, in any other

country would prove itself. The whole question before me, however, is whether there has been a sufficient compliance with the New York statute of wills, which statute differs from the law of most other civilized countries. In New York there is now no preliminary presumption in favor of a will. To admit a will to probate and raise favorable presumptions there must first be established a substantial compliance with the statute. *Matter of Phillips,* 98 N. Y. 267; *Matter of Beckett,* 103 id. 167; *Matter of Hunt,* 110 id. 278, 281; *Matter of Turell,* 166 id. 330; *Matter of Moore,* 109 App. Div. 762, 765; *Matter of Carey,* 24 id. 531, 539; *Matter of De Hart,* 67 Misc. Rep. 13, 18. While these authorities disclose that conclusions are rather more favorable to holographic instruments, they all agree that in some way the statutory requirements must be made out to entitle a holograph to probate. In this case the element of publication has not been made out. The testator did not sign in the presence of the attesting witnesses, nor did he acknowledge his signature to them. *Butler* v. *Benson,* 1 Barb. 526.

I regret that the paper offered has not been proved. Miss Nathan must have seen testator's signature, but he did not acknowledge the same to her, as he should have done. The instrument undoubtedly expresses the testamentary wishes of Mr. Paez, but in the face of the unqualified and positive testimony of Miss Nathan, which I do not care to characterize further, the instrument propounded will be denied probate.

Probate denied.