Matter of the Estate of Stephen D. Tactkian, Deceased.

(Surrogate's Court, New York County, June, 1919.)

Wills — holographic — execution of — when entitled to probate — witness.

> Where a testator exhibited to the subscribing witnesses his holographic will, told them it was his will and asked them to sign as witnesses, and each of them at the time he signed saw testator's signature at the end of the will, which signature two of them recognized, the will is entitled to probate although none of the witnesses saw testator sign or heard him declare the signature to be his, and although the will was exhibited to and signed by each of the witnesses separately and not in the presence of the others.

Proceeding upon probate of a will.

Stoddard & Mark (John M. Stoddard, of counsel), for proponent.

Dicran Simsarian (Harold E. Lippincott, of counsel), for contestant.

Fowler, S.   Objections to the probate of the script purporting to be the last will of the deceased were filed in this court, and upon the trial of the issues before me it appeared that the only question involved was whether the script was executed by the deceased in accordance with the requirements of section 21 of the Decedent Estate Law.

The script is a holograph, and it is signed at the end S. D. Tactkian.   There is no attestation clause. Immediately after the signature of the deceased and under the word " witness," is the signature of Maurice Denhof, and under the latter signature is the word " witness," followed by the signature of Charlotte King Palmer.   Between these two signatures and to

Misc.]    Surrogate's Court, New York County, June, 1919.

the right of them is the signature of. W. L. Kelly, "Notary Public No. 753," and the impression of his seal as notary.

Upon the trial before me Mr. Denhof testified that the deceased showed him a paper and asked him to sign as a witness, and that the deceased then explained to him that the paper was his will. The witness did not see the deceased sign his name at the end of the paper, but he saw his signature on the paper and knew that it was his signature. Neither of the other two witnesses was present at the time that Denhof signed. Charlotte King Palmer testified that the deceased showed her a paper, told her it was his will, and asked her to sign her name as a witness. She did not see the deceased sign his name, but at the time she signed as a witness she saw his signature at the end of the paper which he informed her was his will. She knew his signature. Kelly, who was a notary public, testified that the deceased showed him a paper which he said was his will, and asked him to sign it and put his seal on it. Kelly signed his name to the paper, and at that time saw the signature of the deceased on the paper.

While the cases are not uniform in regard to what constitutes acknowledgment of a signature to a will, it seems to me that the weight of authority is in favor of regarding as sufficient acknowledgment the act of a testator in exhibiting to two or more persons a document bearing his signature, at the same time stating that it is his will, and requesting the persons to whom it is exhibited to sign it as witnesses. *Matter of Hunt,* 110 N. Y. 282; *Matter of Mackay,* Id. 614. In the matter under consideration I am inclined to think that the acknowledgment by the deceased to the witnesses that the paper exhibited to them was his will, his request that they sign their names to the paper as

witnesses to his will, coupled with the fact that his signature at the end of the paper was visible to them when they signed, and that they knew his signature, constitute a sufficient acknowledgment of his signature and a publication and declaration of the script as his will in conformity with the requirements of section 21 of the Decedent Estate Law. *Matter of Phillips,* 98 N. Y. 267; *Matter of Beckett,* 103 id. 167; *Matter of Akers,* 74 App. Div. 461; affd., 173 N. Y. 620.

The mother of the deceased puts in issue the validity of a trust attempted to be created by articles 3 and 4 of the will, and she asks for a construction of articles 2, 5, 6 and 7. As the objections to the probate have been urged with considerable force and learning, it may be that the contestants will appeal from the order entered on this decision, and in the event of their succeeding in the appellate court, any construction of the will which should be made at this time would be unavailing. I will therefore admit the will to probate and reserve the question of validity and effect of its various articles for future consideration.

Decreed accordingly.